UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF RHODE ISLAND
- - - - - - - - - - - - - - - - - - -x
In re:                              :

BESS EATON DONUT FLOUR COMPANY, INC. :    BK No. 04-10630
                Debtor                    Chapter 11
                                    :
In re:                              :
                                    :
LOUIS A. GENCARELLI, SR.                  BK No. 04-10682
                Debtor              :     Chapter 11

- - - - - - - - - - - - - - - - - - -x


## DECISION AND ORDER DENYING UPS CAPITAL BUSINESS CREDIT CLAIM NOS. 37 & 38


APPEARANCES:

        Joseph P. Ferrucci, Esq.
        Christopher M. Mulhearn, Esq.
        Attorneys for Debtors
        FERRUCCI RUSSO P.C.
        55 Pine Street, 4th Floor
        Providence, Rhode Island 02903

        James R. Simmons, Esq.
        Attorney for UPS Capital Business Credit
        NADEAU & SIMMONS, P.C.
        56 Pine Street
        Providence, Rhode Island 02903



BEFORE ARTHUR N. VOTOLATO, United States Bankruptcy Judge

BK No. 04-10630; BK No. 04-10682

At issue here is the enforceability of the prepayment penalties called for in creditor, UPS Capital Business Credit's ("UPS") loan documents. UPS contends that the prepayment penalty is enforceable, *as is*, *period*! The Debtors object on the ground that, to be enforceable, a prepayment penalty must be rationally calculated, reasonable in amount, and not simply an arbitrary charge. Earlier in this case, I held that 11 U.S.C. § 506(b) preempts state law and that a single federal standard (of reasonableness) applies in determining whether such prepayment penalties are enforceable. *See* Order dated October 8, 2004, Docket # 204. After being allowed more than ample opportunity to present evidence as to the reasonableness of its claims, UPS has virtually declined or waived the invitation(s) to do so. Accordingly, the Debtors' Partial Objection is SUSTAINED, and UPS's Claims 37 and 38 are DISALLOWED.

### BACKGROUND

On February 14, 2002, Louis Gencarelli, Sr. and his business, Bess Eaton Donut Flour Company, Inc., entered into two loan transactions with UPS, the first for $5,061,133 ("$5 Million Note"), and the second for $1,969,128 ("$2 Million Note"). Both notes carried floating interest rates calculated

1

BK No. 04-10630; BK No. 04-10682

at prime plus 1.25%, as well as sliding scale prepayment penalties for the first five years.  If the loans were paid off in year one there would be a 5% penalty; year two, a 4% penalty; year three, a 3% penalty, and so on through year five.

On March 1, 2004, Bess Eaton filed a voluntary Chapter 11 case and two days later Gencarelli filed individually.  At the insistence of Tim Hortons these cases were filed in the federal bankruptcy court to facilitate and consummate a previously negotiated sale of Gencarelli's Bess Eaton donut business to Tim Hortons, its Canadian rival.  At auction, after spirited competition at the Bankruptcy Court authorized sale, Tim Hortons was the successful bidder for the majority of Bess Eaton assets for $41,600,000 – $6,080,000 more than the agreed prepetition sale price, resulting in funds sufficient to pay all creditors in full, plus interest, as well as a substantial surplus for the sole shareholder, Gencarelli.  UPS has been paid in excess of $6.8 Million, and remaining in dispute are the prepayment penalties called for under each note.  Because both of its loans were paid off in their third year, UPS seeks a 3% prepayment penalty on each, $146,077 on the $5 Million Note and $56,745 on the $2 Million Note – for a total of $202,822.

2

BK No. 04-10630; BK No. 04-10682

The objection to these claims was initially heard on October 7, 2004 and at that hearing UPS presented no evidence, and at the conclusion of that hearing, which consisted only of arguments of counsel, it was clear that as an over-secured creditor UPS's claim fell under 11 U.S.C. § 506(b) which allows an over-secured creditor "reasonable fees, costs or charges provided for under the agreement under which such claim arose." *See A.J. Lane & Co.*, 113 B.R. 821 (Bankr. D. Mass 1990), holding that Section 506(b) preempts state law, and that a single federal reasonableness test is applied to determine the amount of such fees and costs. Under this standard and on the record before me, I found that there was no basis upon which to allow UPS's claim for prepayment penalties. *See* Order dated October 8, 2004.

Concerned, in hindsight, that my ruling may have been predicated on an insufficient evidentiary basis, UPS was given the opportunity to present evidence as to the reasonableness of its prepayment penalties, and at a hearing on December 15, 2004, UPS presented the testimony of Jeffrey B. Dahms who manages UPS's "sold loans portfolio." When asked as to how the questioned penalties were calculated or established, Dahms

BK No. 04-10630; BK No. 04-10682

stated, surprisingly, that he "had no knowledge," and instead concentrated on the process UPS follows in selling notes in the secondary market. Mr. Dahms's testimony turned out to be completely irrelevant to the issue about which the matter was reopened.

Because of the Court's interest in reaching a result based upon a rational consideration of the merits of the dispute, rather than on the default mode in which UPS left things, a final attempt was made to try and get some relevant evidence before the Court, and a further evidentiary hearing was scheduled for December 22, 2004. Over the Debtors' objection to reopening the matter for a second time, evidence was taken, *de bene*, again through Mr. Dahms, who again spoke in generalities as to what typically happens with prepaid loans, and again he provided nothing of assistance to the Court. To the contrary, Dahms admitted that he was clueless as to how prepayment penalties were calculated, the rate(s) at which UPS re-loaned the funds, or how long it took UPS to get said funds back into the market. He could not say whether new borrowers paid origination fees, points, attorney's fees, or other costs in

4

BK No. 04-10630; BK No. 04-10682

connection with the re-loaning of these funds.  At last the Debtors can relax, because I give up.

### DISCUSSION

In *A.J. Lane*, the Court stated that a prepayment penalty should be analyzed the same as a liquidated damages provision, with the creditor required to establish some reasonable relationship between the amount of the penalty and lender's actual loss caused by the prepayment.  113 B.R. at 828.  In discussing the same issue, the court in *Lane* explained: "At the time of the loans, the most significant damage that the Bank could incur by a prepayment was inability to re-loan the funds at an interest rate at least as high as the rates under the notes," *id*. at 829, and that damages could result from the bank having to expend additional effort and/or expense to re-loan the funds.  *Id*.  The court in *A.J. Lane* found the prepayment penalty unreasonable because at the time of the prepayment, interest rates had risen and the bank could re-lend the funds at a higher rate, and actually benefit from the prepayment.  The court also found that the bank suffered no loss in re-lending the money because it typically requires the borrower to pay all fees and

5

BK No. 04-10630; BK No. 04-10682

expenses associated with its loans. *Id*. Here, reviewing the

record in a light most favorable to UPS, it is still fatally

deficient, and the Debtor's objection to the prepayment penalty

claims of UPS are SUSTAINED.

Finally, in light of the travel of this matter, I must agree

with the Debtors' complaint that the creditor has been

overindulged by the Court in allowing UPS two failed

opportunities to present evidence as to reasonableness. *See In*

*re Durastone Co., Inc.*, 223 B.R. 396, 397-98 (Bankr. D.R.I.

1998)(ultimate burden of proof on a claim always rests with the

claimant).

> Initial arguments are not to be treated as a dress
> rehearsal for a second attempt to prevail on the same
> matter. Counsel is also expected to 'get it right' the
> first time and to present all the arguments which
> counsel believes support its position. Arguments which
> counsel did not present the first time or which
> counsel elects to hold in abeyance until the next time
> will not be considered. *In re Armstrong Store Fixtures*
> *Corp.,* 139 B.R. 347, 350 (Bankr. W.D. Pa. 1992).

*In re Moniz,* 317 B.R. 45, 48 (Bankr. D.R.I. 2004). Accordingly,

I now rule that my invitation for UPS to present additional

evidence was improvident, the evidence taken *de bene* on December

22, 2004, is stricken, the claims of UPS are DENIED in full, and

6

BK No. 04-10630; BK No. 04-10682

the Court apologizes to the Debtors for the inconvenience of having to oppose the additional hearings.

Enter judgment consistent with this order.

Dated at Providence, Rhode Island, this    19th       day of January, 2005.

_____
Arthur N. Votolato
U.S. Bankruptcy Judge

Entered on docket: 1/19/2005

7